IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

JOSEPH W. HIGGINS, PLAINTIFF,

V,

CIVIL ACTION NO. 3:11-cv-01821-PGS -TJB

STEPHEN J. BERNSTEIN ET AL, DEFENDANTS.

------------------------------------------------

EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

------------------------------------------------

INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65(b), and incorporating by reference in New Jersey U.S. District Court Docket No. 99-3678 and Docket No. 10-3023 of the original Complaints and proceedings, the plaintiff seeks for Declaratory and injunctive Relief from the original complaint filed in this docket proceeding.

Plaintiff hereby moves this Court to issue a Temporary Restraining order for conspiracy to violate and interfer with, civil rights constitutionally protected. Against the peace and dignity of the people of the

1

United States. all defendants, severly and jointly, are unlawfully, feloniously, willfully and with intent, involved in a conspiracy to submitt false claims to the United States Treasury office for the custody of three kids, useing false prosecution, false diagnosis, consents, orders, directives, external arrangements or other false method initiating from a New Jersey Essex County Family Court proceeding Docket No. FN-07-251-10 to and FG-07-107-12-wit to claim false allegations of immediate danger or unfit paranthood. Done with the purpose to deprive all family court defendants or any one of them permanantly of their parental rights also constitutionally protected.

Plaintiffs, on behalf of himself,the public and his family as the named plaintiffs , hereby moves this court to forthwith issue a temporary restraining order, pursuant to
Fed.R.Civ.P. 65(b), without requiring the giving of notice thereof to defendants or
their attorney, restraining and enjoining defendants, its officers, agents,
employees, successors, attorneys and all those in active concert or participation with them, from the specific conduct described hereinbelow, pending a hearing and
awarding of relief sought via  contained in plaintiffs' complaint as other relief in the same action as this motion, and further moves this court for an order setting a date for such hearing. Unless this motion is granted, plaintiffs and all class members will suffer immediate and irreparable harm and injury, as a

result of the actions of defendants before
defendants or their attorneys can be heard
in opposition hereto, and before a hearing can
be had on the relief sought in the filed
complaints  for a preliminary injunction as more
fully appears in the original complaint filed
with this action and the declaration
filed herewith.

IRREPARABLE HARM

Plaintiff repeats and realleges and incorporates
by reference the allegations in all paragraphs
hereforth mention in above dockets in this
writing with the same force and effect as if
herein set forth. As a proximate consequence of
the willful and malicious actions of DEFENDANTS,
PLAINTIFF'S have sustained extraordinary damage
in a sum to be determined per proof, including
severe and extreme emotional stress and
anguish, parental alienation, lost time, lost
business investments, lost business
and prosperity, damaged reputation including
both slander and libel, interference with
the pursuit of happiness, loss of domestic
tranquility, loss of general welfare, Denial of
access to the courts and the loss of basic
liberties such as enjoying life with one's
own children in the "best interest of the
child"! Damages incurred by Plaintiffs as a
direct or indirect consequence to the above
mentioned and referenced actions by DEFENDANTS
are also incorporated herein as listed in THE
COUNTS of the above original complaints.

LIKELEHOOD OF SUCCESS ON THE MERITS.

Plaintiff repeats and realleges and incorporates by reference the allegations in all paragraphs hereforth mention in above dockets with the same force and effect as if herein set forth.

Acting under color of law, all defendants were seeking false criminal prosecution against Joseph W. Higgins as a bases to falsly claim immediate danger to kidnapp two kids in exchange for massive federal funding. With intent to Bring false claim to the United State Treasury office for the payment of three kids. Thereby depriving the defendants or any one of them in the family court proceeding of the parental rights in accord with the court order relied on Feb 9, 2010. The Mother's sworn affidavit shows that she never went back to the court after Jan 5, 2010, the date the civil complaint was dismissed, and seeked a criminal indictable offence Jan 16, 2010. The evidence shows that Youth and Family Services seeked and promoted this criminal prosecution Jan 16, 2010 by falsy useing A desk clerk police named Germaine Poyotte who signed this criminal complaint under certification establishing no probable cause. That they used it to claim immediate danger and took custody of two kids Feb 5, 2010. That all defendants intends to keep useing this Feb 9, 2010 Court order that orders that the kids be placed in state custody upon false allegations that Latasha Solomon filed a Formal Complaint Jan 16, 2010 against Joseph Higgins

for terroristic Threats. That the mother have lost the new born child that the plaintiff is the father of. The new born kid was not even born on Feb 5, 2010. The plaintiff who have been declared innocence of all domestic violence charges in the State of New Jersey and have no domestic violence history do not have a mental health history was properly supervising those kids Feb 5, 2010. Therefore, Latasha Solomon who do not have a criminal record would be innocent of any neglect or abuse. The best interest of the child do not apply in this case because dyfus and Judge Bernstein took the kids through false and criminal activities.

There is a likehood of success on the merits because the Federal Law strongly prohibits the interference of our constitutionally protected civil rights such as described above. The acts described above are against the peace and diginity of the people of the United States. As a result of defendants concerted
unlawful and malicious conduct, Mr. Higgins was both deprived of his rights to
equal protection of all the laws and to due process of law, of his right to his property, and due course of justice was impeded in violations of the fourth, fifth, and fourteenth amendments of the Constitution of the United States and 42 U.S.C. section 1985(3); 18. U.S.C. Section 242 as more fully described in the two above dockets. Thus, for this
reason, THAT LESS HARM will result to the DEFENDANTS  if the TRO issues than to
the PLAINTIFF if the TRO does NOT issue;

The first is balancing the "best interests" test with claims of parental rights. Parents have a right to separate, divorce, and move. They have a right to direct the upbringing of their children, including the right to exclude others from that function. They also have procedural rights to contest custody, visitation, and adoption.

What about "living in a free country" or being a member of an ethnic community to which one has ancestral ties? Or does "best interests" mean the interests of the child in nurture and care apart from these considerations?

THAT THE PUBLIC INTEREST WEIGHS IN FAVOR OF THE PLAINTIFF

The primary function of the State Bar
Association and the Family Court is to
target low income family with medicaid cards,
mentally ill, the edely, walfare,
and others to maximize the number of children in
the system on false reasons,
and for the purpose of obtaining subsidies from
federal programs.... These
payments in turn benefit DYFS contractors. .
The Manufactureing and covering up the
curruption lies on the Family Court, Dyfus,
their legal attorneys and psychologist. (How)
the curruption is being played out is
described below:

.
The Federal preemption of family law has spawned
dangerous practies nationwide.
The unfettered flow of federal dollars to
protect kids, for example, has
parthenogenically hatched battalions of legal
and mental health professionals
who have realized that the fabrication of cases

6

yields a paycheck. It all sta
rts in the local appellate division in trenton
where two important entities team

up to ensure federal money continues to flow
into the state: The attorney for
the child's office and the mental health
services offices.


The case in the family court did not include an
attorney for the child, but the
court assumed that role by deferring totally to
the court appointed evaluation.
This appellate court duo have the authority and
intention to ensure that a case
involving the protection of a child neither
ceases nor diminishes thoughout its
pendency, perhaps for the duration of the
minority of the child. This explains
why many judgements turn out in favor of the
hostile and infit parent so as to
keep up the litigation for the money.

This duo also carries the clot of the local
appellate division. What the court
will determine will most assuredly withstand any
appeal. Many family court
practitioners declare they don't do appeals
because of the force of this duo's
authority. Central to their operation is the
trial judge in the Superior court
of New Jersey Essex County. Often an entry level
position, the family court
judge has minimal practice experience: They may

never have filed a single notice
of appearance in a single case, never gone
through discovery and motion practice
and may never have done a single trial.

They may not know the role or the management of
expert witnesses-psychologists-put on the stand
to be qualified as experts and then asked to
render an opinion based upon a decade of book
learning and years of clinical practice. They
centainely would have been inacapable of filing
and perfecting an appeal. Nevertheless, there
sits the family court judge bereft of
any experience, legal or otherwise, sitting in
judgement of the fate of innocent
children by cases driven for monetary reasons by
the court and the mental health
professional appointed by the court. Turning to
the mental health professional, the ruse most
people fall for is that a doctorate in
psychology is the key to talent in the field of
mental health. Quite to the contrary, a
doctorate is merely a stepping stone to a
career
involving the clinical administration of mental
health services. The actual
handling of cases of subordinate mental health
professionals in an organizational hierarchy
that serves the public. Further, adding to the
baseline qualifications of the psychologist is
peer review typically accomplished by
the psychologist's foray into publishing his
work for the receipt of criticism.

It is noteworthy that the typical government family court psychologist has none of these qualification typically, after a doctorate in psychologist(obtain from an internet unversity) or perhaps some barely related academic field, the typical psychologist attahes himself to a court and begins to render opinions consistent with the wishes of the court. This generates additional referrals and

eventually, the psychologist appears on court approved lists. The umbrella of a court shields the court appointed psychologist from voir dire, the process of questioning what is it that qualifies this psychologist for court practice, and shield him from peer review, the process of criticism of the psychologist's work product.

In New Jersey family court, it is common practice to impose a protective order on a psychologist's musing about a case. These "reports" are often times simply mailed to the court on an expert basis and appear in the court file. As for the court file, rules regarding confidentiality are exaggerated to such an extent that no one other than the court and the clerk can see the file. Attorneys not formally on the case cannot see these files. Even the psychologist reports may not be distributed to the litigants in the

interest of confidentially. This cone
of silence allows the most sterling abuse to take place and the most
unprofessional and unethical conduct to occur by both the court and
psychologists. See page 6 of the p-6 attach with the original complaint.

For example, merly by virtue of his appointment as a psychologist by the court,
He can meet with a non-custodial parent and a child one year, and then do so the
next year and compare the court, the court appointed psychologist can render
ridiculous and alarming conclusions. He can declare a virtuous muslim women
mother of four children, to be a "slut". He can meet with-a non-custostodial
parent and a child one year, and then do so the next year and compare the two
meetings. For example, the psychologist invited his desire winner to his home
and sat with him at his kitchen table. The desire loser was never invited into
the court appointed psychologist home. The psycholigist can say the
non-custodial parent is being alienated from his children if he wishes or he can

say theres no alienation. These meetings are never on the record, there is no
ventication of the indenfication of the parties being met with and not

10

transcript being made. The report is merly a collection of narrative hearsay
presented in a stream of thought format. The conclusion is rendered absent any
background in child or family psychology. Hence, as a mini courtroom, any
outside entity can influrence the decision. Even the judge can direct who should
win and the psychologist can fabricate any report.(It is noteworthy that latasha Solomon, the mother of the foregoing proceedings, appears to be missing since Sept 23, 2010. It is to this plaintiff's believe that Dyfus have confiscated this female and have her in a mental institution pursuant to false diagnosis as retaliation and cover up with respect to this case. Latasha Solomon has not played on her facebook since Sept 23rd 2010. Thats not the norm for her. Hence, Latasha Solomon is needed in a criminal pending case at the Newark Municipal Court in complaint no. 2010 019292 State v. Latasha Solomon so the plaintiff can clear her name and bring the truth out with respect to Germaine Poyotte who actually was the police who sign under false certification the criminal complaint that holds those kids.)

Hence, the psychologist has no check and balances, and to the contrary, has the
authority of the appallete court to do anything he wants to in a case. The lack
of peer review protects the psychologist from licensing complaints. The cases
always involve children. These mental health professionals lack even a basic

11

understanding of family systems or the
psychology of infancy or adolesence. A
cursory review of the typical psychologist's
curricular vitate shows virtually
no training, education or background in the
psychology of children. Moreover,
these untrained, unprincipled and court
protected psychologist confuse their
role with their output: They are supposed to
determine whether a parent-child
unfit will fit together or not; but instead,
they fall back on their limited
training and experience and render psychologist
diagnoses of their desired loser
in the case. This is why these "reports" are
often nothing more than hearsay
bundled into a report that is passed off as
evidence in a case.

This evidence is cummulative because both the
report and the psychologist's
testimony appear in the record together. This
evidence is irrelevant because it
is not the fit that is opined on it is the
desired loser, incapacity that is
addressed-often for follow on "therapy" at a
price while a child is withheld by
court order. This process bears some scrutiny.
The parent is found deficient or
conflictual. The court appoints a de-conflictor,
usually a cohorty of the court
appointed evaluator psychologist while
withholding the child from the parent. In
the undelying case, the mother latasha had a
evaluator and he offered his

12

services to be the therapist(Mr. Powell) for the
mother. This would have allowed
the evaluator to fool the mother in question
into thinking she would actuially
be therapized, make reports to the court of how
deficient and collect a river of
money to correct the mother's problems.

All while her children are withheld by court
order. As money fill up the pocket
and the child becomes alienated, the parent
continues to slog on with training
or coordination. Whether, in the form of an
evaluation or a report, this
evidence is unfairly prejudicial because the
label of a psychologist infirmity
carries enormous impact even though a
psychologist infirmity can be channeled
with very positive results. This evidence is not
reliable because of the lack of


voir dire and peer review. In essence, the
psychologist becomes an anti-court:
No court reporter and no record, no cross
examination or confrontation, no
swearing in: Just the psychologist's con
countertransference kicking in with an
eye for the desire of the court.

Due process turns on its head. All rules of
procedure and evidence are vacated
in favor of the musing and decisions of the
court appointed psychologist. A
protection racket at the appellate divisions

13

keeps lawyers quiet by the threat
to their licensure. As evidence Justice is
failing http://www.youtube.com/watch?v=A3xs2HTVGcs And see this
viral video http://www.youtube.com/watch?v=rVlKETfhYMw   Typically, lawyers have to work very
hard to earn their licenses to practice law:
They are loath to take action that would cause
the suspension or revocation of their license.
The judge gets a direct injection of haersay
conjured up by the psychologist and goes a
long with the psychologist at the peril of being
overturned by the appellate
division.

Hence, the judge is engaged in a duel conflict
of interest. The first is the
judge must split her allegiance between actual
justice and musings of the
psychologist, and second, the judge must split
her loyalty between her court and
the influence of the appellate division. Unknown
to most judges, these
psychologists typically violate the well known
prohibition against dual
relationships.This is the limitation on the
number of roles a psychologist may play at any
one time. For example, as will and have happen
in the mothers in question's case,Latasha
Solomon the psychologist recomends removal of
the child from his mother, and then offer to
theraprize the mother. Hypothetically, a court
appointed psychologist can be
bribed. He can assemble any hearsay he wants in
support of the bribing parents.

Hundred of thousands of innocent parents, accross the nation, can be put, and
have been put, through this mill of losing their children and paying the
psychologist, with their medicaid card or out of pocket expience. The
psychologist therefore get paid twice for the same activity. The effective
antidote to this mental health evaluation process is a privately retained and
credential psychologist. One Graw, the psychologist introduced to america by
Opah Winfrey on Television.
Dr. Phil as he is called is a professional expert witness who accompanies his
clients to court sits in on depositions, reads the documents in the case and
takes the stand to render an opinion.

Privately retained experts have no need to testify. They can act as trial
consultants as aids and assistants and they do not even need to be licensed in
the jurisdiction to do so. This is because expertise transcends geographical
boundaries. The psychologist in latasha case is this Dr. Phil. He is planning a
strategy which will be allowed to do because he understands the psychologist
roadmapping that is essential in a family court case. He understands child
development and the trial process on the emotions of a child.

He assists in witness coordination and selection and preparation because of his
unique insight as a mental health professional has in a courtroom where the appellate division has usurped the function of the delivery of mental health
services. Hence, the mother here is the antidote to the interloping and
poisoning of the family cout trial process.

Judge Bernstein on July 21, 2011, issued an order to show cause FG-07-107-12 to justify this feb 9, 2010 order that the plaintiff being accused of committing a crime.. After holding these kids for two years, It was a title 30 proceeding to be heard on Sept 28, 2011. This hearing was had. There was no Corroborating evidence involved. Latasha Solomon was not found guilty of any wrong doing. She was not convicted Of neglect nor abuse. Judge Bernstein is being served as a defendant and have personal interest in the outcome of the matter refuses to return those kids back to the plaintiff and Latasha Solomon.

  For above reasons, the defendants without requiring the giving of notice
thereof to defendants

or their attorney, issue a  restraining order, enjoining defendants, its
officers, agents, employees, successors, attorneys and all those in active concert or participation with them, from the specific conduct described hereinabove,
pending a hearing and awarding of relief sought via
contained in plaintiffs' complaints as other

relief in the same action as this
motion, and further request this court for an
order setting a date for such
hearing.

Joseph W. Higgins
311 Summer Ave    / Sept 30, 2011
Newark Nj 07104

U.S. DISTRICT COURT
2011 SEP 30 A 11: 21